UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,　　　　　　　　　　Case No. 16-cr-93-pp

　　　　　　Plaintiff,

v.

ARMANDO SANTIAGO,

　　　　　　Defendant.

---

**ORDER DENYING MOTION TO SUPPRESS EVIDENCE (DKT. NO. 9)**

---

　　　　The grand jury returned a one-count indictment, charging the defendant with possessing two firearms after having been convicted of a felony; the indictment also alleges that the firearms had previously traveled in interstate commerce. Dkt. No. 1. (The government later obtained a superseding indictment, adding a forfeiture count. Dkt. No. 11.) The defendant filed a motion to suppress the weapons, arguing that law enforcement obtained them as a result of an unlawful stop, arrest and search. Dkt. No. 9. Magistrate Judge Jones held an evidentiary hearing on the motion, dkt. no. 15, and ended up issuing a recommendation that this court deny the motion to suppress, dkt. no. 22. The defendant objected to the report, dkt. no. 23, and the government responded, dkt. no. 25. The court agrees with Judge Jones' report and recommendation, and based on that recommendation, will deny the motion to suppress.

1

Judge Jones' report and recommendation lays out in detail the facts that came out at the evidentiary hearing. Dkt. No. 22 at 2-5. The bottom line is that while investigating the defendant in connection with allegations that he was involved in June 2015 shooting incidents in Milwaukee, police discovered that the defendant's live-in girlfriend had purchased a firearm from a sporting goods store. Id. at 2. They went to the couple's residence (one officer wearing an active body camera recorder), where they spoke to the girlfriend. She confirmed that she'd purchased a firearm, and that it was in the residence with the defendant. Id. at 3. At the officers' request, the girlfriend asked the defendant to come outside; when he didn't, they asked the girlfriend to let them into the residence, which she did. Id. They found the defendant in the kitchen, and asked him to step outside—which he did. They patted him down, escorted him downstairs, and—when he became argumentative—handcuffed the defendant and put him in a squad car. Id. The officers eventually took the defendant to the police station, without asking him for consent to search the residence. Id. at 3-4. They did, however, ask the girlfriend for consent to search the residence, and she gave it. The officers found the gun the girlfriend had purchase, as well as another one. Id. at 4. The officers later questioned the defendant about the guns, and (after he received his Miranda warnings), he incriminated himself. Id.

The defendant argued that even though the police had the defendant's live-in girlfriend's consent to search, the search violated the Fourth Amendment because they did not also obtain the defendant's consent. Id. at

2

22. Judge Jones found, pursuant to the Supreme Court's decision in Fernandez v. California, ___ U.S. ___, 134 S. Ct. 1126, 1134 (2014), that the girlfriend's consent was sufficient unless the officers removed the defendant from the residence for the purpose of avoiding an objection to the search. Id. at 7-8. Thus, he turned to whether the officers had reasonable suspicion to pat down and detain the defendant. Judge Jones concluded that they did—the defendant had been in the residence alone with a firearm before the officers entered, and it was reasonable for them to pat him down (to make sure it wasn't on his person) and detain him while they located the weapon. Id. at 10.

The defendant argued, however, that his detention went beyond the bounds of an investigatory stop, and became an arrest for the purposes of preventing him from objecting to the search. Judge Jones disagreed, finding that the officers detained the defendant for one minute before transporting him to the police station (id. at 17 n.2), and that within twenty or so minutes, the officers had probable cause to arrest the defendant (having found the firearms). Id. at 11. The defendant argued that he was, in reality, arrested before the police found the firearms (the police handcuffed him and put him in a patrol car). Id. at 12. Judge Jones concluded that, while the use of the handcuffs may have been unnecessary, it did not somehow allow the officers to find evidence that they otherwise wouldn't have found. Id. at 15. The girlfriend consented to the search, and the officers did not officially arrest the defendants until after they had recovered the firearms. Id. at 15-16. For all of these reasons, Judge Jones recommended that the court deny the motion to suppress.

3

In his objection, the defendant argues that Judge Jones should not have relied on <u>Fernandez</u> and similar decisions, because the police officers did not give the defendant a chance to object to the search. Dkt. No. 23 at 4-5. He argues that the officers obtained the girlfriend's consent to enter the residence, then—without asking the defendant for his consent to search—took the defendant out of the residence, without explaining to him why he was being detained. The officers then asked the girlfriend for consent to search. The defendant argues that this chain of events shows that the officers removed the defendant from the residence to prevent him from objecting to the search. <u>Id.</u> at 5. He also argued that the police did not have probable cause to detain the defendant, because all they had at the time they detained him was the girlfriend's statement that she'd bought a gun, that it was in the residence, and that the defendant may have touched it. <u>Id.</u> at 7.

The government responds that the officers had reasonable suspicion, based on the girlfriend's statements, to believe that the defendant might have a gun. Dkt. No. 25 at 9. They also were aware that the defendant was a felon, and that he had a criminal history that involved allegations that he'd been involved in two shootings. <u>Id.</u> at 10. For these reasons, the government argues, the officers had a reasonable basis for temporarily detaining the defendant. The government also argues that the officers' brief detention of the defendant in the squad car was reasonable—it lasted approximately fifteen minutes, and the officers conducted their search immediately. <u>Id.</u> at 11-12. The government acknowledges Judge Jones' concern about the fact that the officers handcuffed

4

the defendant, id. at 12, but argued that under the "collective knowledge" doctrine, the officers knew that they were dealing with a felon with multiple, serious prior convictions, as well as with a possible shooter, id. at 13-14. The government noted that the defendant had refused to come out of the residence when the girlfriend had asked him to (before the officers entered), and had become argumentative on his way out of the residence. Id. at 14.

Finally, the government argues that the officers had probable cause to arrest the defendant—they had reason to believe that he had a gun in his appointment and that he'd touched it (which meant he knew it was there); he'd refused to come out of the residence once he knew the officers were there to ask about a gun (and had time to hide it before the officers came in); when the officers did find the gun, it wasn't where the girlfriend had said it would be (giving rise to an inference that the defendant had moved it once he knew the police were there); the officers found a second gun, which the girlfriend said the defendant was holding for a friend; and the officers found ammunition and clips in the couple's shared bedroom. Id. at 14-16. The government notes that the question isn't whether the defendant *owned* the guns, but whether he possessed them, and the officers had probable cause to conclude that he did.

Finally, the government disputes the defendant's argument that the officers took him out of the residence to prevent his objection to the search. The government points out that while they were with the defendant in the residence, he did not object to their being there. It was only after the officers started to take him out of the residence that he started to ask questions about

5

why the officers were there, or what he'd done. Even then, the defendant did not tell the officers to get out of the residence, or tell them that they could not search it. Id. at 18.

The court agrees with Judge Jones' conclusions, and with the government's arguments. The officers arrived at the residence of a known felon, armed with information that there was a firearm in the residence. They had reason to believe that he'd been involved in shootings before. He did not come out of the residence when asked, and by the time the girlfriend let them in, the defendant knew that the officers were there to ask him about a gun. These facts provided them with reasonable suspicion to detain him. During the minutes he was detained, the defendant did not object to the officers' presence, or object to them searching the apartment. The defendant implies that the officers had an obligation to ask him if he would consent to the search before taking him out of the residence, but provide no authority for such a proposition. The officers detained the defendant for a relatively short period of time—fifteen to twenty minutes—while they searched the apartment. Whether they detained him in cuffs or not, the court agrees with Judge Jones that the detention was reasonable, and based on reasonable suspicion. By the time the officers arrested the defendant at the police station, they had obtained the girlfriend's consent, found the gun she'd purchased (somewhere other than where she thought it would be), and found another gun and ammunition in the defendant's bedroom.

6

The evidence does not support the conclusion that the officers removed the defendant from the residence to prevent him from giving consent, and thus the girlfriend's consent was sufficient to allow the search.

The court **ADOPTS** Magistrate Judge Jones' recommendation, Dkt. No. 22, and **DENIES** the defendant's motion to suppress, Dkt. No. 9.

The court will set a telephonic status conference, to discuss with the parties a schedule for a final pretrial conference and trial date.

Dated in Milwaukee, Wisconsin this 19th day of December, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge